UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

MARTIN T. SOLOMON,

        Plaintiff,

v.

D. CLARK et al.,

        Defendants.

_____/

Case No. 1:13-cv-470

Honorable Gordon J. Quist

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## **Discussion**

### I.    Factual allegations

Plaintiff, Martin T. Solomon,[1] is a state prisoner presently incarcerated at the G. Robert Cotton Correctional Facility, where he is serving an 8 to 15 year sentence for third degree

---

[1] In his pleadings, Plaintiff identifies himself as Martin Antonio Solomon. (*See* Compl., docket #1, Page ID#1.) However, the Court will identify Plaintiff consistent with the Michigan Department of Corrections Offender Tracking Information System (OTIS), http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=301631 (visited Aug. 9, 2013), which identifies Plaintiff as Martin T. Solomon.

criminal sexual conduct, MICH. COMP. LAWS 750.520d(1)(a). The events giving rise to this action allegedly occurred at multiple Michigan Department of Corrections (MDOC) facilities and allegedly involved a large number of MDOC employees.[2] Plaintiff sues the following Defendants: MDOC; Gus Harrison Correctional Facility (ARF) Warden Paul Klee; Earnest C. Brooks Correctional Facility (LRF) Warden Mary Berghuis; Muskegon Correctional Facility (MCF) Warden S. Burt; Saginaw Correctional Facility (SRF) Warden Lloyd Rapelje; ARF Deputy Wardens S. Campbell and Lee McRoberts; and MCF Deputy Warden Shane Jackson. Plaintiff also sues the following ARF personnel: (Unknown) Tenniswood; (Unknown) Bayer; (Unknown) Kisner; (Unknown) Sissen; (Unknown) Pickle; B. Evers; and N. Root. In addition, Plaintiff sues the following MCF personnel: Correctional Officer D. Clark; Inspector (Unknown) Davis; Resident Unit Manager (Unknown) Winger; Dr. William D. Nelson; and Grievance Coordinator (Unknown) Simmon. Finally, Plaintiff sues the following: D. Hill; (Unknown) Reasoner; J. Morefield; A. McDonald; and SRF Resident Unit Supervisor McLean.

Plaintiff's complaint spans 58 pages of text and an additional 82 pages of exhibits.[3] Much of what Plaintiff relates is difficult to follow, and ascertaining the identity of the allegedly culpable actors is equally challenging. At the time of filing his complaint, Plaintiff appears to have been housed in at least four to five MDOC facilities. However, Plaintiff never makes it clear which institution he was at during what time period. Additionally, Plaintiff often sets forth multiple incidents that took place at multiple facilities at varying times as if they were one event. Plaintiff also fails to anchor his allegations in time and space, rarely, if ever, stating what happened where and when it happened.

---

[2] In addition to naming a large number of MDOC personnel as Defendants, Plaintiff identifies numerous additional MDOC personnel within the body of his Complaint. Allegations against these non-Defendant MDOC personnel are only considered to the extent they relate to a named Defendant.

[3] On August 26, 2013, the Court issued an order construing Plaintiff's complaint (docket #1), and his supplement to the complaint, (docket #10), together, as the operative pleading in this case.

As near as can be understood, Plaintiff's allegations focus on the following two areas: (1) Defendants' interference with Plaintiff's access to grievance procedures; and (2) Defendants' failure to protect Plaintiff from harm. The gist of Plaintiff's complaint is that there is an MDOC-wide conspiracy to reveal to inmate-gang members that Plaintiff is "snitching" so that Plaintiff is being attacked or being threatened with attack in every MDOC facility in which Plaintiff is housed. Coupled with this conspiracy is an additional multi-facility conspiracy to improperly write Plaintiff class I and II misconduct tickets so that his access to the grievance process will be limited and so that he will be denied parole. To the extent necessary, additional factual allegations relevant to Plaintiff's claims are discussed below.

Plaintiff alleges the following five claims for relief: (1) Defendants Berguis, McRoberts, Campell, Evers, Klee, and Kisner failed to protect Plaintiff from being attacked by other inmates; (2) Defendants Klee, McRoberts, Campbell and Root were deliberately indifferent to Plaintiff's safety when they improperly moved him to security level II and housed him with gang members who attempted to assault him; (3) Defendants Parks, Morefield, McDonald and Burt failed to protect Plaintiff from multiple rapes by ignoring Plaintiff when he first reported being raped; (4) Defendants breached the contractual provisions of the MDOC Employee Handbook thereby impairing the obligation of contract between "Debtor Solomon, Martin Antonio-Organization and Secured Party Martin Antonion Solomon, TDC/non-assumpsit" (docket #1, Page ID#32); (5) Defendants Tenniswood, Bayer, Campbell, Root, McRoberts, Klee, MDOC, ARF, LRF, Oaks Correctional Facility (ECF), Chippewa Correctional Facility (URF), Berghuis, Burt, and Hill conspired to prevent Plaintiff from participating in the administrative grievance process, interfered with Plaintiff's court access and denied him due process by preventing him from being present at misconduct hearings, failing to give him notice of charges before the hearings and preventing him from presenting a defense.

3

Plaintiff seeks compensatory and exemplary damages; a declaratory ruling that Defendants violated Plaintiff's constitutional rights; an injunction voiding all class II misconduct tickets written by Defendants Sissen, Pickle, Morefield, McDonald, Evers, and Hill, voiding all class I misconduct tickets written by Defendants Pickle and Sissen, reducing Plaintiff's security level and ordering that a "SPON be placed in [his] file [so] that Plaintiff will not be transferred back to facilities where the staff and inmates [are] responsible for the misconduct," (docket #10, Page ID#161); and a restraining order against all Defendants.

II. Immunity

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the MDOC will be dismissed.

### III. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal

rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. First Claim for Relief

In his first claim for relief Plaintiff alleges that Defendants Berghuis, McRoberts, Campbell, Evers, Klee, Kisner and Root failed to protect him from being attacked by other prisoners and failed to properly supervise prisoners in violation of the Eighth Amendment.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880-881 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cnty. of Medina, Ohio*, 29 F.3d 238, 242-43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety").

To state a prima facie claim that Defendants were deliberately indifferent to Plaintiff's need for protection from assault by other inmates, Plaintiff's allegations must satisfy an objective component and a subjective component. *Farmer*, 511 U.S. at 835-38. The objective component is satisfied by allegations that, absent reasonable precautions, Plaintiff may be exposed to a substantial risk of serious harm. *Id*. at 836. To satisfy the subjective component, Plaintiff must allege that the Defendants were "aware of facts from which the inference could be drawn that a

substantial risk of harm would exist if reasonable measures were not taken, that the [Defendants] actually drew the inference, and that the [Defendants] acted in disregard of that risk." *Amick v. Ohio Dep't of Rehab. & Corr.*, No. 12-3515, 2013 WL 1223570, at *3 (6th Cir. Mar. 27, 2013) (citing *Farmer*, 511 US. at 837). *See also Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010).

Plaintiff fails to allege facts sufficient to state a failure-to-protect claim. While Plaintiff sets forth facts recounting alleged attacks by various prisoners at various locations on various dates, Plaintiff fails to connect any of these Defendants to each element necessary to state a prima facie failure-to-protect claim. To the extent that Plaintiff alleges that Defendants were aware that he was attacked in the past, he fails to allege that they were aware of a risk that Plaintiff would be attacked again or that Plaintiff reasonably feared being attacked again. To the extent that Plaintiff alleges that Defendants were aware of a substantial risk of harm to Plaintiff, he fails to allege that they deliberately failed to act. Plaintiff may satisfy one or more of the elements required to state a prima facie failure-to-protect claim against these Defendants, but Plaintiff does not satisfy every required element with respect to any of these Defendants. Consequently, Plaintiff's first claim for relief will be dismissed.

### B. Second Claim for Relief

In his second claim for relief Plaintiff alleges that Defendants Klee, McRoberts, Campbell and Root were negligent when Plaintiff was assaulted on April 1, 2013, and they moved him from security level I to security level II. With regard to the April 1, 2013 assault Plaintiff alleges as follows: that on April 1, 2013 he was assaulted in a level I hotel unit back bathroom by three "blood gang members;" and that

> [a]fter Plaintiff was assaulted Defendants/Conspirators Paul Klee, McRobert and S. Campbell and Inspector Beckwith receive a call and/or visit from the Michigan State Police before the assault occurred because Plaintiff called his

7

> mother Pearline Solomon and Albert Bennett who called the State Police about a contracted hit on Plaintiff as plotted by the gangs. Executed the hit on Plaintiff The State Police Detective showed up and took a statement from Plaintiff about the 3 blood gangs members assaulted. Amazingly Sgt. Root and his supervisor Inspector Beckwith ordered Plaintiff be back to the same cube where the attacker sleep in the same cube areas.

(Docket #1, Page ID##20-21(verbatim)). Plaintiff also alleges that:

> Late in the evening Sgt. Root supervised the fire alarm drill for <u>housing unit H</u> and as soon Plaintiff was forced to exit the Housing Blood Gang Member A.K.A. named <u>Southside</u> charge at writer/Plaintiff with the support of gang caused writer to escape back into the Housing unit where yard officer Johnston handcuffed Plaintiff and Placed in Protective Segregation Status.

(*Id.* at 21 (verbatim)).

As discussed above, a claim for failure to protect under the Eighth Amendment requires that Plaintiff alleges facts sufficient to satisfy an objective and subjective component. Plaintiff fails to set forth any facts suggesting that these Defendants were aware of any risk of harm to Plaintiff. Even if Defendants Klee, McRoberts and Campbell were aware of gang members' threats against Plaintiff, Plaintiff does not allege that they did anything to place him at risk of harm. Moreover, although Plaintiff alleges that Defendant Root and Inspector Beckwith, who is not a Defendant, ordered Plaintiff back to the same cube as his alleged attacker, nowhere does Plaintiff allege that Defendant Root was aware of any risk of harm to Plaintiff from this "attacker." Because Inspector Beckwith is not a Defendant, nor are there any allegations that Inspector Beckwith spoke to Defendant Root about the alleged attack on Plaintiff, what Inspector Beckwith knew or did is not relevant to the Court's analysis.

Plaintiff fails to sufficiently allege a failure-to-protect claim based on the April 1, 2013, assault. Consequently, Plaintiff's second claim for relief will be dismissed.

8

### C.     Third Claim for Relief

In his third claim for relief, Plaintiff alleges that Defendants Morefield, McDonald and Burt failed to protect Plaintiff from multiple rapes by ignoring him when he complained about the first time he was raped.  Specifically, Plaintiff alleges as follows:

> On 4/26/13 Plaintiff Lt. Mr. Quinn that Plaintiff Bunky who locks in 3 unit 122-Bottom Bunk Repeatedly Raped Plaintiff Defendant Mr. Quinn[4] ignored Plaintiff and informed Plaintiff if you don't go back to your cell I will have you tazed and taken back to the unit with more ticket to send you to a <u>level 4</u>.  Plaintiff informed Defendants/Conspirators Morefield and McDonald come on you a Big Boy you can handle yourself and stated we don't care you probably like it raw and hard in the presence of other prisoners making it known before other prisoners in the surrounding area that cries he Be Raped by his Bunky and he needs our help.

(Docket 1, Page ID##26-27 (verbatim)).  Plaintiff additionally alleges that:

> Plaintiff Bunky in cell 3-122 Bottom Just left segregation initially charge with sexually assaulting prisoner but Drop it Down to consentual sexual contact that was told to Plaintiff by other inmates in 3 unit.

(*Id.* at 27 (verbatim)).

To the extent Plaintiff alleges additional rapes, Defendants Morefield and McDonald are not mentioned at all.  The next time Plaintiff alleges that he was raped, the rape appears to have taken place at MCF, which does not appear to be where Defendants Morefield and McDonald worked.  Defendant Burt is not mentioned in connection with any rapes.

Like his first and second claims for relief, Plaintiff's third claim for relief fails because he has not alleged facts sufficient to state a failure-to-protect claim.  Even if Defendants Morefield and McDonald's alleged comments about Plaintiff liking it "raw and hard" in the presence of other prisoners is sufficient to show awareness of a risk of harm, Plaintiff fails to allege that they

---

[4]Mr. Quinn is not a Defendant in the instant action.

were deliberately indifferent to the risk.[5] Plaintiff alleges that Mr. Quinn, who is not a Defendant, ordered Plaintiff to return to his cell, not Defendants Morefield and McDonald. Plaintiff fails to allege any facts suggesting that Defendants Morefield and McDonald had any role or responsibility in the decision to return Plaintiff to his cell. Absent any involvement in the decision to return Plaintiff to his cell, Defendants Morefield and McDonald cannot be charged with disregarding the risk of harm to Plaintiff. *See Williams v. McLemore,* 247 F. App'x 1, 10-11 (6th Cir. 2007) (finding that defendants could not be liable under the Eighth Amendment for failure to protect where they had no involvement in decision to return plaintiff to facility where known threat existed). Consequently, Plaintiff's allegations are insufficient to state a failure-to-protect claim. Therefore, Plaintiff's third claim for relief will be dismissed.

### D.   Fourth Claim for Relief

In his fourth claim for relief, Plaintiff alleges that Defendants breached contractual provisions of the MDOC Employee Handbook thereby impairing the obligation of contract between "Debtor Solomon, Martin Antonio-Organization and Secured Party Martin Antonio Solomon, TDC/non-assumpsit." (Docket #1, Page ID#32).

A claim may be dismissed as frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). Claims that lack an arguable or rational basis in law include claims for which the defendants are clearly entitled to immunity and claims of infringement of a legal interest which

---

[5] To the extent Plaintiff intends to allege that Defendants Morefield and McDonald violated his constitutional rights by their comments about Plaintiff's liking it "raw and hard," he fails to state a claim. Allegations of verbal harassment and threats are insufficient to state a civil rights claim under § 1983. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) (holding verbal abuse does not qualify as punishment under the Eighth Amendment); *Pasley v. Conerly*, 345 F. App'x 981, 984 (6th Cir. 2009) (The law is clear that verbal harassment and threats do not violate the Eighth Amendment).

clearly does not exist; claims that lack an arguable or rational basis in fact describe fantastic or delusional scenarios. *Neitzk*e, 490 U.S. at 327-28; *Lawler*, 898 F.2d at 1199. The Court has the "unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzk*e, 490 U.S. at 327. "A finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). Examples of claims lacking rational facts include a prisoner's assertion that Robin Hood and his Merry Men deprived prisoners of their access to mail or that a genie granted a warden's wish to deny prisoners any access to legal texts. *See Neitzke*, 490 U.S. at 327-28; *Lawler*, 898 F.2d at 1198-99. An *in forma pauperis* complaint may not be dismissed, however, merely because the court believes that the plaintiff's allegations are unlikely. *Id.*

Plaintiff's allegations claim infringement of a legal interest that does not exist and lack any rational basis in fact. Plaintiff has no interest in any contracts that might exist between the MDOC and its employees. Additionally, Plaintiff's identification of himself as "Debtor Solomon, Martin Antonio-Organization and Secured Party Martin Antonio Solomon, TDC/non-assumpsit" (docket #1, Page ID#32) is entirely nonsensical. Consequently, Plaintiff's fourth claim for relief fails to state a claim.

### E. Fifth Claim for Relief

#### 1. Grievance Process

Plaintiff alleges that Defendants Tenniswood, Bayer, Campbell, Root, McRoberts, Klee, Berghuis, Burt and Hill conspired to prevent him from filing any grievances and interfered

with his access to the courts in violation of his First Amendment and due process rights.[6]

Prisoners have a First Amendment right to file nonfrivolous institutional grievances without being subject to retaliation. *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000); *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). Plaintiff, however, does not contend that Defendants retaliated against him for filing grievances. Instead, he claims that Defendants conspired to prevent Plaintiff from participating in the grievance process. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected right to an effective prison grievance process. *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) ("[T]here is no inherent constitutional right to an effective prison grievance procedure."); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Also, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Consequently, Defendants' alleged interference with Plaintiff's ability to submit grievances did not deprive him of a constitutionally protected interest. In the absence of a constitutionally protected interest, Plaintiff has no due process right to file a prison grievance.

In addition, even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit)

---

[6] Plaintiff also identifies a number of additional MDOC personnel and four MDOC correctional facilities in his fifth claim for relief, however, neither the individuals nor the facilities are named Defendants. Moreover, correctional facilities are not persons or legal entities subject to suit under § 1983. *Webber v. Standish Maximum Prison*, No. 2:06-CV-11921, 2006 WL 1284610 (E.D. Mich. May 10, 2006). *See also Atkinson v. Hurley*, No. C-2-02-670, 2002 WL 31412441 at *1 (S.D. Ohio Sept. 30, 2002) (citing *Foulks v. Ohio Dep't. of Rehab. & Corr.*, 713 F.2d 1229, 1232 (6th Cir. 1983)); *Taylor v. Doe,* No. C.A. 9:01-4118-25BG, 2002 WL 31996020, at * 6 (D.S.C. July 31, 2002) (a building is not a "person" subject to suit under § 1983).

cannot be compromised by his inability to file institutional grievances. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of available administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. In light of the foregoing, Plaintiff fails to state a cognizable claim.

2. Misconduct Hearings

Plaintiff also alleges that Defendants denied him due process by preventing him from being present at misconduct hearings, failing to give him notice of charges before the hearings and preventing him from presenting a defense. Plaintiff makes these allegations in connection with his May 1, 2013 class I misconduct tickets and multiple class II misconduct tickets.[7]

a. Class II Misconduct Tickets

A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a class I misconduct is a "major" misconduct and class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a class I misconduct. (*See* Policy Directive 03.03.105, ¶ AAAA). Plaintiff

---

[7]Although Plaintiff seems to suggest that he received more than one class I misconduct ticket, his allegations and the exhibits attached to his complaint reflect only a single class I misconduct ticket from May 1, 2013.

does not allege that he lost any good time or disciplinary credits in connection with his class II misconduct tickets.

To the extent Plaintiff describes the consequences of any of his misconduct tickets, he only notes that his class II misconduct tickets resulted in the loss of privileges, including yard privileges, for varying amounts of time. Plaintiff additionally notes that he was denied a pillow, but it is not clear if this denial was in connection with a misconduct ticket. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from his class II misconduct convictions.

b.     Class I Misconduct Ticket

With respect to his class I misconduct ticket, Plaintiff fails to allege facts sufficient to support his assertion that he was not given notice of the hearing and was not allowed to be present or to present a defense. Plaintiff mentions the class I misconduct ticket in his prayer for relief. He also attaches as exhibit Q to his supplement to the complaint (docket #10) a misconduct report with a violation date of May 1, 2013 and a hearing date of May 3, 2013. Plaintiff does not reveal the outcome of the hearing nor does he describe any sanctions levied against him.[8] There are only two other areas in the complaint that could even arguably relate to Plaintiff's May 1, 2013 class I misconduct ticket.

---

[8] Although Plaintiff does not specify any sanctions he suffered as a result of his class I misconduct ticket, Michigan Department of Corrections Policy Directive 03.01.101, ¶U, states that disciplinary credits may be forfeited when a prisoner is found guilty of a major misconduct.

> First, he states that
>
>> Hearing Officer D.J. Pallas was deprived of critical evidence that supports the basis of this lawsuit he was deprived of Official Records of all the assaults occurred while in the Jurisdiction of MDOC. Thus D.J. Pallas also Ruled that such evidence of Prior assaults by Gangs at other Previous Facility and that such gangs of MCF becoming aware is not relevant to defend against a unreasonable disobeying Direct Order to Return to MCF gang Population where the rapes occurred.

(Docket #10, Page ID#154(verbatim)). Then, in the very next paragraph he states

> Defendant Mr. Davis deprived Plaintiff equal Protection of MDOC internal affair Police and Prison Elimination Rape act by Failure to Report a Felony of sexual assaults against Plaintiff to which also deprived Hearing officer with Preliminary Forensic Trace evidence discovery of "semen stains on Platiniff's cell wall in 3-unit-122" to would of Further provided more proof against MCF Defendants For trying to escape liability from Plaintiff.

(*Id.* (Verbatim)).

It is entirely unclear whether these passages refer to the May 1, 2013 class I misconduct ticket and subsequent hearing or some other hearing. Even if they do relate to the class I misconduct hearing, they do nothing to support Plaintiff's claim. If these passages relate to the May 1, 2013 hearing date, they demonstrate that Plaintiff was at that hearing and was able to present evidence, although it appears the evidence he wished to present was determined to be irrelevant. The Court need not affirmatively decide whether these passages support Plaintiff's claim or not, however, because the consequence of the class I misconduct ticket does not implicate a liberty interest.

As noted above, a prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that

15

attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[9] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F.

---

[9] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Plaintiff has not identified any deprivation arising from his convictions. Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails. *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004).

Based on the foregoing, Plaintiff fails to state a due process claim. Consequently, his fifth claim for relief will be dismissed.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that all of Plaintiff's claims will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

A Judgment consistent with this Opinion will be entered.


Dated: October 3, 2013                         /s/ Gordon J. Quist
                                              GORDON J. QUIST
                                          UNITED STATES DISTRICT JUDGE